J-S21026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYREK MCWILLIAMS | : | |
| | : | |
| Appellant | : | No. 1106 EDA 2023 |

Appeal from the Judgment of Sentence Entered November 29, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003536-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYREK MCWILLIAMS | : | |
| | : | |
| Appellant | : | No. 1107 EDA 2023 |

Appeal from the Judgment of Sentence Entered November 29, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003538-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYREK MCWILLIAMS | : | |
| | : | |
| Appellant | : | No. 1108 EDA 2023 |

Appeal from the Judgment of Sentence Entered November 29, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003540-2020

BEFORE: LAZARUS, P.J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED NOVEMBER 6, 2024**

Appellant Tyrek McWilliams appeals from the judgment of sentence imposed following his conviction for first-degree murder and related offenses. After review, we affirm on the basis of the trial court's opinion.

We adopt the trial court's summary of the underlying facts and procedural history of this matter. *See* Trial Ct. Op., 10/3/23, at 1-7. Briefly, Appellant was arrested and charged with multiple offenses following a shooting in 2020. On November 18, 2022, a jury convicted Appellant of first-degree murder, conspiracy, firearms not to be carried without a license, carrying public firearms in Philadelphia, possessing an instrument of crime (PIC), and two counts of both aggravated assault and recklessly endangering another person (REAP). On November 29, 2022, the trial court sentenced Appellant to life in prison without the possibility of parole. Appellant filed a timely post-sentence motion, which was denied by operation of law.

Appellant subsequently filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued an opinion addressing Appellant's claims.

On appeal, Appellant raises the following issues:

1. Were the guilty verdicts against the weight of the evidence—

    a. for Murder-1 as the only evidence tying [A]ppellant to any crime came from biased and unreliable police identification gleaned from a patchwork of surveillance video. Identification was, in part, highly unreliable as police had purported de minimis prior contact with [A]ppellant;

- 2 -

     b. for Aggravated assault, REAP, PIC and the firearms charges as the only evidence tying [A]ppellant to any shooting came from biased and unreliable police identification gleaned from a patchwork of surveillance video. Identification was, in part, highly unreliable as police had purported de minimis prior contact with [A]ppellant?

2. Was the evidence insufficient to sustain the guilty verdicts—

     a. for Murder-1 as [A]ppellant did not shoot decedent, and there was no evidence that he with premeditation willfully, deliberately and specifically intended to kill the decedent;

     b. for Conspiracy to Commit Murder-1, as there was no direct evidence that [A]ppellant agreed with another to commit any murder;

     c. for the Aggravated Assaults (F1) as there was insufficient evidence that [A]ppellant attempted to cause serious bodily injury to the complainants who never came to court?

3. Did the testimony of Detective Thorsten Lucke as an expert in the field of digital forensic recovery and compilation, exceed the narrow scope of his expertise and was it used to improperly instruct the jury as to what factual conclusions to draw and was done in a play-by-play fashion that was cumulative and included improper commentary?

4. Did the trial court err in denying [A]ppellant's motion for a mistrial, as the prosecutor committed prosecutorial misconduct when they said [A]ppellant "[is] really going to jail for life," as discussing the penalty for murder-1 was unfairly prejudicial and inflammatory. (N.T., 11/17/22, pp. 104, 157-159) The prosecutor acted intentionally or with a conscious disregard that such prosecutorial overreaching would create a substantial risk that [A]ppellant would be deprived of a fair trial and violate [A]ppellant's substantive and procedural due process rights. Accordingly, the convictions should be reversed and the Commonwealth barred from retrying [A]ppellant, pursuant to the Pennsylvania and United States Constitutions. (***Commonwealth v. Johnson***, 231 A.3d 807, 826 (Pa. 2020); Pa. Const. art. I, § 10; U.S. Const. amend. V)?

Appellant's Brief at 9-10.

Following our review of the record, the parties' briefs, and the relevant law, we affirm on the basis of the trial court's opinion. **See** Trial Ct. Op., 10/3/23, at 1-19. The trial court thoroughly addressed Appellant's claims and correctly concluded that he was not entitled to relief. Specifically, we agree with the trial court that Appellant waived his evidentiary challenge by failing to raise an objection at trial. Further, we discern no abuse of discretion by the trial court in rejecting Appellant's weight claim or his motion for a mistrial. Finally, we agree with the trial court that there was sufficient evidence to sustain Appellant's convictions. Accordingly, we affirm.[1]

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/06/2024

---

[1] The parties are directed to attach a copy of the trial court's opinion in the event of further proceedings.

- 4 -

IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH | : | CP-51-CR-0003536-2020 |
| | | CP-51-CR-0003538-2020 |
| | | CP-51-CR-0003540-2020 |
| OF PENNSYLVANIA | : | |
| | : | |
| V. | : | Superior Court No.: |
| | : | 1106 EDA 2023 |
| | | 1107 EDA 2023 |
| | | 1108 EDA 2023 |
| Tyrek McWilliams | : | |

2023 OCT -3 PM 2:35  FILED  OFFICE OF JUDICIAL RECORDS CRIMINAL DIVISION FIRST JUDICIAL DISTRICT OF PA

## OPINION

**ANHALT, J.**

Appellant in the above-captioned matter appeals this court's life sentence after conviction for Murder Of The First Degree 18 Pa.C.S.A. § 2502, Conspiracy Murder Of The First Degree 18 Pa.C.S.A. § 903, Firearms Not to Be Carried W/O License 18 Pa.C.S.A. § 6106, Carry Firearms Public In Phila 18 Pa.C.S.A. § 6108, Possessing an Instrument of Crime W/Int 18 Pa.C.S.A. § 907, two counts of Aggravated Assault 18 Pa.C.S.A § 2702, and Recklessly Endangering Another Person 18 Pa.C.S.A § 2705. The court submits the following opinion in accordance with the requirements of Pa.R.A.P. §1925(a). No relief is due.

**PROCEDURAL HISTORY:**

On September 3, 2020, police arrested and charged Appellant with Murder and related charges stemming from the shooting death of Tahj Williams and the Aggravated Assault of Tyreek Smith and Lamar Richards, which occurred on April 23, 2020. On November 18, 2022 a jury found Appellant guilty of the above charges. On November 29, 2022, the court sentenced Appellant to life in prison without the possibility of parole. Appellant filed a timely post-sentence motion on December 5, 2022, which was denied by Operation of Law on April 5, 2023. On April 27, 2023 Appellant filed a timely Notice of Appeal.[1] On August 1, 2023, the court issued an Order requesting Appellant to file a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). On August 12, 2023, Appellant filed a timely Concise Statement of Matters raising the following issue, listed verbatim:

1. The guilty verdict was against the weight of the evidence–

    A. for Murder- 1 as the only evidence tying the appellant to any crime came from biased and unreliable police identification gleaned from a patchwork of surveillance video. Identification was, in part, highly unreliable as police had purported *de minimis* prior contact with [A]ppellant;

    B. for Aggravated assault, REAP, PIC [,] and firearms charges as the only evidence tying [A]ppellant to any shooting came from biased and unreliable police identification gleaned from patchwork of surveillance video. Identification was, in part, highly unreliable as police had purported *de minimums* prior contact with [A]ppellant.

2. The evidence was insufficient to sustain the guilty verdict–

    A. for Murder-1 as [A]ppellant did not shoot decedent, and there was no evidence that he with premeditation willfully, deliberately[,] and specifically intended to kill the decedent;

---

[1] Trial counsel filed a motion to withdraw as counsel on April 27, 2023. The trial court granted counsel's motion and appointed new counsel on April 28, 2023. Due to a clerical error in the Clerk's office in the First Judicial District, appellate counsel was not appointed until August 1, 2023.

2

B. for Conspiracy to Commit Murder-1, as there was no direct evidence that [A]ppellant agreed with another to commit any murder;

C. the evidence was insufficient to sustain the convictions for the Aggravated Assault (F1) as there was insufficient evidence that the appellant attempted to cause serious bodily injury to the complainants who never came to court.

3. The testimony of Detective Thorston Lucke as an expert in the field of digital forensic recovery and compilation, exceeded the narrow scope of his expertise and was used to improperly instruct the jury as to what factual conclusions to draw and was done in a play-by-play fashion that was cumulative and included improper commentary.

4. The Trial Court erred in denying [A]ppellant's motion for a mistrial, as the prosecutor committed prosecutorial misconduct when they said the appellant "[is] really going to jail for life," as discussing the penalty for murder-1 was unfairly prejudicial and inflammatory. (N.T., 11/17/22, [at] 104, 157-159). The prosecutor acted intentionally or with a conscious disregard that such prosecutorial overreaching would create a substantial risk that [A]ppellant would be deprived of a fair trial and violate [A]ppellant's substantive and procedural due process rights. Accordingly, the convictions should be reversed and the Commonwealth barred from retrying the appellant, pursuant to the Pennsylvania and United States Constitutions. (Commonwealth v. Johnson, 231 A.3d 807, 826 (Pa. 2020)); Pa. Const. art. I, § 10; U.S. Const. amend. V)[.]

**FACTUAL HISTORY:**

On April 23, 2020, at around 3:00PM, Philadelphia Police Officer Gilbert Brito was off duty and on his way to work in his personal vehicle. While driving northbound on 65th Street and Dicks Avenue, Officer Brito came to a stop at a traffic light. While waiting for the light to change, Officer Brito heard multiple gunshots[2] and looked around to see where the gunshots were coming from. Still inside his personal vehicle, Officer Brito observed a black male wearing a blue jacket with a black hoodie and dark colored pants, walk in front of his vehicle with a handgun. Seconds later, Officer Brito observed another black male walk in front of his vehicle on foot. Officer Brito immediately pulled over to call 911 after he observed the decedent, who was shot, through his rearview mirror, and another off-duty officer at the scene[3]. Officer Brito

---

[2] Officer Brito testified that he heard more than five gunshots that were in rapid succession. N.T., 11/15/22, at 57.
[3] Officer Roman. N.T., 11/15/22, at 49.

3

exited his vehicle and proceeded to render aid to the decedent.[4] Once the marked patrol vehicle arrived, Officer Brito and Officer Roman helped carry the decedent's body into the patrol car and the decedent was transported to the hospital. N.T., 11/15/22, at 48. Id. at 48-50, 60.

Detective Michael McKenna and his partner retrieved video surveillance from Masis Market at 6448 Dicks Avenue. Detective McKenna watched the video surveillance from Masis and then followed the path the shooters took after the shooting to obtain more video. They obtained video from the Philadelphia Police Department's Real Time Crime Center, private residences and private businesses. Id. at 121-129, 130-137.

Detective Thorsten Lucke, an expert in the field of digital forensic recovery and compilations testified to extracts of contents that were recovered from the cellular device of Appellant as well as to the videos recovered by Detective McKenna. In his presentation, Detective Lucke testified to video evidence which showed Appellant and Co-defendant, Saedair Lindsey approaching Maisi Market located at 6448 Dicks Avenue. Appellant can be seen in the video wearing a dark colored jacket, a black hoody, and black shoes with a white vertical stripe at the heel. The co-defendant, Sadeir Lindsey, can be seen wearing a grey jacket, a black hoody under it, and sneakers with a reddish bottom, with a Nike swoosh. Appellant and Co-defendant are seen lingering by a parked van for quite some time, while looking in the direction of the store at 6448 Dicks Avenue. A white SUV comes and circles around the area and parks on the corner of 65th and Dicks Avenue in Philadelphia. Appellant and the co-conspirator immediately leave the location by the white van and walk quickly and directly to the corner where the white SUV parks. Decedent, seventeen-year-old Tahj Williams, exits the white SUV. He walks towards the store but stays on the sidewalk as Appellant and Co-defendant approach him. Two other people,

---

[4] The decedent's body was in front of a smoke shop corner store at 6448 Dicks Avenue. N.T., 11/15/22, at 49.

4

Tyquan Smith and Lamar Richards also exit the white SUV. As Tahj walks up to the SUV, Appellant begins firing at Tyquan Smith and Lamar Richards while the Co-defendant, Saedair Lindsey, starts shooting at Mr. Williams while his back is turned. Mr. Smith and Mr. Richards avoid the shots fired by Appellant by running away. Mr. Williams is shot four times, once in the face, twice in the back, and once in the arm. The shots to the back prove to be the fatal shots. The manner of death was multiple gunshot wounds, and the manner of death was homicide. N.T. 11/16/2020, pp. 10 18-19, 21-27, 42, 78-79, 83-84, 235, 267.

The video evidence recovered by Detective McKenna and presented by Detective Lucke follows the path of the shooters for several blocks. The videos show that during their travel, Appellant and the co-defendant shed the clothes, masks and hats worn at the corner of 64th and Dicks. The shoes Appellant and the Co-defendant wore at the shooting location could also be seen in the surveillance video following their path leaving the scene, as well as items of clothes. The jurors were able to compare zoomed in video stills of the faces of the shooters, without masks and hoods, to known photographs of both Appellant and the co-defendant. The jurors were also able to compare the stills from the video and the actual videos to the Appellant sitting in the courtroom. This is not the only evidence of identification provided by the Commonwealth. *Id.* at pp. 28, 30, 33, 35-36, 41, 46.

Detective Mikal Carr worked in the 16th police district in Philadelphia for four years before becoming a detective. As part of his duties as a Philadelphia Police Officer, he came to know Appellant in the district. He would see him in the neighborhood multiple times a month for years. He described the frequency of his contact with Appellant as "regularly." He also monitored Appellant's Instagram account. Because of his familiarity with people in his district, homicide detectives asked Detective Carr if he would view the video surveillance recovered in

5

this investigation and see if he knew any of the people in the video. Detective Carr identified Appellant as the person who wore the dark colored jacket with the black hoody and dark shoes with the vertical stripe, based on the regular contact he had with Appellant for 4 years prior to the murder and based on Appellant's Instagram account. *Id.* at pp. 62-64, 67.

Police Officer Jeremy Olesik, a fifteen year veteran of the Philadelphia Police Department also identified Appellant from the video surveillance recovered from the scene of the murder and the flight therefrom. Officer Olesik knew Appellant from numerous contacts in the confines of the 18th police district.[5] In fact, Officer Olesik had a documented interaction with Appellant in April, 2020, just a few days prior to this incident. *Id.* at pp. 166-169, 172, 175.

Officer Lammana works in the tactical squad for the 18th district. He monitors various social medial accounts including the Instagram account for "911Philly".[6] "Philly911" posted the video and photos of this incident. An account associated with Appellant, with his picture as part of the identification of the account interacted with the owners of the "911Philly" account in the form of direct messages, or "DMs". In those messages, a message from Appellant instructs the owner of the account to "take my face down," essentially admitting that the photo posted regarding the shooting at 6448 Dicks Avenue was that of Mr. Tyreek McWilliams. The messages go on to further inculpate Appellant, such as him saying, "I'm get out of this. Allah got me." *Id.* at pp. 177-179.

Finally, regarding identification, the Commonwealth presented evidence of flight and consciousness of guilt. Detective Lucke testified that a forensic examination of Appellant's phone revealed that this phone had been activated on June 22, 2020, months after the murder of

---

[5] The 16th district and the 18th district are next to each other in the West Philadelphia area of the City of Philadelphia.
[6] "911Philly" is an independently run news source where videos of crimes are posted and pictures of people who are "wanted" for those crimes are posted. (Notes of Testimony 11/16/2022, p. 177)

Tahj Williams. The phone contained numerous photographs of Appellant as well an multiple references to "Tyreek" on the phone in messages and screenshots. The "Google" searches contained on that phone beginning on June 22, 2020 and ending when police arrested Appellant on September 3, 2020 included searches for: "Philly Most Wanted", "delete Instagram", "triple shooting in Philly", "Philly FBI Most Wanted", "Tyreek McWilliams", "17 year old shot in southwest philly," "Saedair Lindsey". There were numerous photos of the Co-defendant and there were numerous photos of both Appellant and the co-defendant. The phone also contained screenshots of google searches related to the shooting at 6448 Dicks Avenue on April 23, 2020. Of the 575 searches on the phone for this period of time, 132 were related to this incident. *Id.* at pp. 267, 269-274, 274-277, 280.

Detective Lucke also identified conversations Appellant had with his girlfriend on his phone. Appellant stated, "I fucked up real bad. Real bad. I want you to know I apologize about everything that I said. I don't wish no death on you. I was just upset. I'm always going to love you. I don't ever want to see anything happen to you. I love you more than you actually think. I will be thinking about you every day when I'm away. When the time comes, I already do, I love you, Pup. It's okay and everything is going to be fine. I think about you every day now cause this shit really boughtta be different, cause it is." *Id.* p. 282.

Police arrested Appellant on September 3, 2020. When he was arrested, Appellant gave a false name. He also cut his long, distinctive beard and had a short, cropped haircut, as opposed to longer hair that he had in the videos and pictures. N.T. 11/17/2022, pp. 7-8.

Based on this overwhelming evidence, the jury was convinced beyond a reasonable doubt of Appellant's guilt and found him guilty of the above charges. This appeal follows. No relief is due.

7

**DISCUSSION:**

**1.The verdict was not against the weight of the evidence.**

Appellant raises the weight of the evidence claim regarding the identification of

Appellant for all the crimes for which the jury found Appellant guilty. This claim fails.

"The weight of the evidence is exclusively for the finder of fact who is free to believe all,

part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth*

*v. Champney*, 832 A.2d 403, 408 (Pa. 2003). The Supreme Court of Pennsylvania

in *Champney* explained that an appellate court cannot substitute its judgment for that of the

finder of fact. *Id.* Therefore, the court may only reverse the lower court if the verdict is so

contrary to the evidence as to "shock one's sense of justice." *Id. citing Commonwealth v. Small*,

741 A.2d 666, 672–73 (Pa. 1999). The Supreme Court has set forth the following standard of

review for Appellant's claim that the verdict is against the weight of evidence and that he should

be entitled to a new trial:

> The essence of appellate review for a weight claim appears to lie in ensuring that
> the trial court's decision has record support. Where the record adequately supports
> the trial court, the trial court has acted within the limits of its discretion.
> A motion for a new trial based on a claim that the verdict is against the weight of
> the evidence is addressed to the discretion of the trial court. A new trial should not
> be granted because of a mere conflict in the testimony or because the judge on the
> same facts would have arrived at a different conclusion. Rather, the role of the
> trial judge is to determine that notwithstanding all the facts, certain facts are so
> clearly of greater weight that to ignore them or to give them equal weight with all
> the facts is to deny justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013). (citations and quotation

omitted). *See also Kaplan v. O'Kane*, 835 A.2d 735, 737 (Pa. Super. 2003). (holding "[t]he

power to grant a new trial lies inherently with the trial court, and [the] appellate court will not

reverse its decision absent a clear abuse of discretion or an error of law which controls the

outcome of the case.").

8

Here, there was no conflict in testimony regarding identification, as the determination of guilt relied mostly on the identification testimony of the police witnesses who knew Appellant, as well as the videos shown to the jury. These videos and the stills and photos of the Appellant allowed each juror to draw their own conclusions with respect to the identification of Appellant and his co-conspirator through the videos of the crime and the subsequent videos that follow Appellant as he flees the scene shedding clothes and a surgical mask. Appellant's own actions in his direct messages and on his cell phone also corroborate the independent identifications made by the police as well as each juror. There was more than enough credible evidence of identification to sustain the jury's verdict. Despite Appellant's claims that the identification came from "biased" and "unreliable" sources, the jury disagreed and credited those police identifications as reliable and convicted Appellant. Even more significant, the jurors were able to view with their own eyes, the "patchwork" of videos and compare those videos to Appellant, who was sitting at counsel table at the trial for four days.

Initially, Detective Mikal Carr testified that he has known Appellant for eight years in his capacity as a police officer in the 16th police district in Philadelphia. He had numerous contacts with Appellant throughout the years, he describes that as "a good amount of times per month" and "regularly". Police Officer Olesik also testified to his knowledge of Appellant from his experiences with him, described as "numerous times" including having a documented interaction with Appellant just weeks before this shooting. Both these officers testified that they saw the still photos of the Appellant from the City Star gas station are were able to identify him in those videos. N.T. 11/16/2022, pp. 63-64, 67; 166-168, 175.

Moreover, Detective Lucke testified that he assembled a compilation video consisting of videos of the shooters before the shooting, during the shooting and various videos of the alleged shooters as they left the area, discarding the clothes and the mask worn during the shooting. Detective Lucke showed the jury a still photograph from those videos and also showed the jury a photo of Appellant for them to compare themselves. Appellant was also sitting in the courtroom for the jury to compare the video and photographs to Appellant. The jury was free to believe

9

Detective Carr, Officer Olesik and their own eyes as they were able to draw their own conclusions regarding identification.

Therefore, Appellant's weight of evidence argument is meritless.

## 2. The evidence was sufficient for the jury to find Appellant guilty of all charges.

The evidence adduced at trial was sufficient for the jury to find Appellant guilty of the above charges. Appellant's sufficiency claims are without merit. No relief is due.

When challenging the sufficiency of evidence, the Superior Court has held:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the factfinder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the factfinder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated, and all evidence actually received must be considered...

*Commonwealth v. Boyer*, 282 A.3d 1161, 1171 (Pa. Super. 2022).

## A. First Degree Murder

Appellant contends that the evidence provided was not sufficient to establish his first-degree murder conviction. (CP-51-CR-0003536-2020). However, the testimony, videos and the identification of Appellant as one of the shooters in this case was sufficient to sustain Appellant's murder conviction.

10

To sustain a conviction of first-degree murder, the Commonwealth must establish that: (1) a human being was unlawfully killed; (2) the defendant is responsible for the killing; and (3) the defendant acted with malice and the specific intent to kill. *Commonwealth v. Haney*, 131 A.3d 24, 33 (Pa. 2015). "Specific intent to kill as well as malice can be inferred in a trial for first-degree murder from the use of a deadly weapon upon a vital part of the victim's body." *Commonwealth v. Thomas*, 54 A.3d 332, 335 (Pa. 2012). Further, "each member of a conspiracy to commit murder may be convicted of first-degree murder, regardless of which of the conspirators inflicted the fatal wound, where the elements of first-degree murder are made out as to that conspirator." *Commonwealth v. Busanet*, 817 A.2d 1060, 1064 (Pa. 2002).

As testified to by Dr. Victoria Sorokin, the assistant Medical Examiner, qualified by stipulation as an expert in the field of forensic pathology, Tahj Williams died from homicide due to multiple gun shots to the body, including 2 fatal shots to the back and one shot to the head. There is no question that Mr. Williams was unlawfully killed by gunshots, nor is there any question that malice was established by multiple fatal gunshot wounds to his back and a gunshot wound to the head, as the fact finder can infer malice by the use of a deadly weapon on a vital part of the body. *Thomas*, 54 A.3d at 335; N.T. 11/16/22 at 78-84. Here, there was evidence Tahj Williams suffered from four gunshot wounds, one graze wound to the arm, one to the head and two to the back/torso. Both the head and the back are vital parts of the body.

Moreover, the evidence in this case shows Appellant and the co-conspirator waiting for the victims to arrive. Video evidence established unequivocally that both Appellant and the co-conspirator went to the location of the murder armed. They went into the store on Dicks Avenue and exited. They waited a few feet from the store for a substantial period and kept watching the corner where the store is. As soon as the car in which the decedent and the two other men pulled

11

up onto the block in front of the store, Appellant and the co-conspirator immediately ambush the three men and began shooting. This evidence, coupled with the above evidence showing the location of the gunshot wounds to the victim and the number or shots fired clearly shows the specific intent to kill necessary for first-degree murder.

As described previously, the evidence of identification is overwhelming. Not only was Appellant identified by two police officers who had more than sufficient familiarity with Appellant, Appellant's own words and conduct after the incident show his consciousness of guilt. The communications he has with his girlfriend indicate he acknowledges that he "fucked up real bad" and "things boughtta be different," searching the internet for information about the shooting, and his own identification of himself on the "911Philly" account are all more evidence that corroborates the already credible identifications made by police who have had multiple interactions with Appellant.

## B. Conspiracy to Commit First Degree Murder

Appellant next argues that the evidence was insufficient to sustain his conspiracy to commit murder conviction. The evidence was sufficient to sustain this conviction.

Under the Pennsylvania Criminal Code, an individual is guilty of conspiracy if that individual, with another person or persons to commit a crime if, "with the intent of promoting or facilitating its commission he agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime." 18 Pa.C.S.A. § 903(a)(1). Although each member of a conspiracy must possess the specific intent to kill before a conviction of first-degree murder can be sustained, that

12

intent can be demonstrated by circumstantial evidence. *Commonwealth v. Wayne*, 720 A.2d 456, 465 (Pa. 1998).

Here, Appellant and his co-conspirator arrive at the location together. They wait for the car with the victims to arrive and both proceed towards the victims with firearms drawn. They both ambush and shoot multiple times at the victims. That one of the shooters was able to inflict a fatal wound while the other did not hit his target does not show the lack of intent to kill. The evidence shows that they clearly planned to wait for the victims to arrive to begin this targeted attack. They approached the victims at the same time. The pulled their guns at the same time. Appellant shot at Mr. Richards and Mr. Smith at the same time his co-conspirator shot at Mr. Williams. Police recovered seventeen fired cartridge cases from the scene. This was a planned attack to kill all three of the men, but Lindsey's bullets were the only ones that proved fatal for Mr. Williams. That Richards and Smith were able to avoid the brunt of the attack does not diminish the shared intent of Appellant and his co-conspirator. *Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887 (1978).

Therefore, there is sufficient evidence to convict Appellant of conspiracy to commit murder.

### C. Aggravated Assault

Appellant contends that the evidence provided was not sufficient to sustain the charges of Aggravated Assault as it relates to victims Tyquan Smith and Lamar Richards "who never came to court." Again, no relief is due.

As the statute makes clear, a person can be found guilty of Aggravated Assault if he attempts to cause serious bodily injury; it is not necessary that the victim actually suffers

13

serious bodily injury. *Commonwealth v. Alexander,* 477 Pa. 190, 383 A.2d 887 (1978); *Commonwealth v. Pandolfo,* 300 Pa. Super. 447, 446 A.2d 939 (1982). A person is guilty of aggravated assault under 18 Pa.C.S.A. § 2702, Aggravated Assault, (a)(1), "if he (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." The evidence presented in this matter showed Appellant and the co-conspirator confronted all three victims with guns as they parked their car outside the shop on the 6400 block of Dicks Avenue. Appellant and the co-conspirator pointed the guns at the victims and began shooting from a close distance, as seen in the videos. *See Commonwealth v. Nichols,* 692 A.2d 181 (Pa.Super. 1997) (holding specific intent to cause serious bodily injury may be inferred from the use of a deadly weapon upon a vital part of the body). Appellant and the co-conspirator each fired multiple shots at the victims. A total of seventeen fired cartridge casings were recovered by the Philadelphia Police Crime Scene Unit. The intended targets ran to escape the barrage of gunfire. It can be inferred that Appellant intended to cause serious bodily injury to the victims because of the number of shots both Appellant and the co-conspirator fired in the direction of the victims. *See Commonwealth v. Thompson,* 559 Pa. 229, 739 A.2d 1023 (1999), *cert. denied,* 531 U.S. 829, 121 S.Ct. 79, 148 L.Ed.2d 41 (2000) (finding sufficient evidence presented to convict appellant of aggravated assault where appellant shot at and narrowly missed the victim); *see also Commonwealth v. Woods,* 710 A.2d 626 (Pa.Super.1998) (holding specific intent to harm may be inferred from the circumstances and that finding is a matter for the jury). Further, the video shows that even when the victims were running to escape the gunfire, Appellant continued to shoot in their direction. This conduct is evidence of Appellant's intent to cause them serious bodily injury. The jury, as finder of fact, properly found beyond a reasonable doubt that

Appellant possessed the intent necessary to sustain a conviction for aggravated assault as to both Mr. Richards and Mr. Smith. *Com. v. McCalman*, 2002 PA Super 78, 795 A.2d 412, 415–16 (2002).

3. Detective Lucke's testimony was not cumulative and not improper commentary.

Appellant asserts that the "testimony of Detective Thorston Lucke as an expert in the field of digital forensic recovery and compilation, exceeded the narrow scope of his expertise and was used to improperly instruct the jury as to what factual conclusions to draw and was done in a play-by-play fashion that was cumulative and included improper commentary." However, trial counsel did not object on this basis during the testimony of Detective Lucke concerning the video evidence during the trial, or at any other appropriate time. N.T. 11/16/22 p. 5-56. Pennsylvania Rules of Appellate Procedure Rule 302 states that "issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Because counsel failed to object on the basis that the testimony was cumulative and improper commentary, he cannot raise this issue on appeal and it is waived.[7]

Counsel for the Co-defendant raised an objection to Detective Lucke's use of the still images of the video and photographs of his client, to which counsel for Appellant joined.[8] The issue counsel raised was whether the evidence was more prejudicial than probative. Co-counsel

---

[7] Even if it were not waived, *Commonwealth v. Williams*, 255 A3d 565, 576 (Pa. Super. 2021) is directly on point. In that case the Superior Court held that the witness in that case, who identified only a person for the jury to follow across several videos, and did not identify anyone as the shooter, the testimony did not intrude upon the jury's domain as factfinders. The witness in that case merely aided the jury in understanding the video so they could determine the identification of the shooter. The same can be said here. Detective Lucke did not identify either defendant as shooters. He merely drew the jurors' attention to items of clothing that could help them draw their own conclusions about the identity of the people who moved across the videos shown to them and compare them to the identification they could make on their own from the actual shooting incident to the people who were in the courtroom.

[8] The notes of testimony read that trial counsel stated "Also **not** my objection" on November 15, 2020, page 113. (Emphasis added). The trial court is assuming that this is supposed to say, "also **note** my objection." after co-counsel raised an objection to a portion of Detective Lucke's testimony.

15

suggested how the picture and the still image of the video should be presented and the Commonwealth agreed to do so. Moreover, in reviewing the admissibility of evidence, the standard is abuse of discretion. A trial court's decision on the admissibility of evidence will not be reversed absent a clear abuse of discretion. *Commonwealth v. Conte*, 198 A.3d 1169 (Pa. Super. 2018). "Abuse of discretion is not a mere error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill-will." *Id.* at 1180. The trial court's ruling on this issue was exactly what counsel asked for and therefore, neither counsel can show how this ruling was manifestly unreasonable, a misapplication of the law, or the result of partiality or prejudice, ill-will or bias.

### 4. The court did not err in denying Appellant's Motion for Mistrial.

Appellant claims the trial court erred in denying Appellant's motion for a mistrial when the prosecutor stated Appellant is "really going to jail for life." Appellant contends that "discussing" the penalty for first degree murder was unfairly prejudicial and inflammatory and constituted prosecutorial misconduct, therefore, a mistrial should have been granted.

The decision to declare a mistrial is within the sound discretion of the trial judge and will not be reversed absent a flagrant abuse of discretion. *Commonwealth v. Conti,* 236 Pa. Super. 488, 345 A.2d 238 (1975). The legal standard for prosecutorial misconduct is:

> Comments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in [the jurors'] minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict.

*Commonwealth v. Bryant,* 620 Pa. 218, 237 (2011); *Commonwealth v. Hutchinson*, 611 Pa. 280 (2011). Any challenged statement must be viewed not in isolation, but in the context in which it

16

was offered. *Hutchinson, supra* at 307. "[The] prosecutor must be free to present his or her arguments with logical force and vigor." *Id.* at 306–07. Within reasonable bounds, the prosecutor may employ oratorical flair and impassioned argument when commenting on the evidence [...]. *Commonwealth v. Paddy,* 609 Pa. 272, 15 A.3d 431, 458–59 (2011). It is also well established that "[a] trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Commonwealth v. Travaglia,* 611 Pa. 481, 28 A.3d 868, 879 (2011) ("A mistrial is an extreme remedy that is required only where the challenged event deprived the accused of a fair and impartial trial."). When the trial court gives adequate cautionary instructions, declaration of a mistrial is not necessary. *Commonwealth v. Chamberlain* 30 A.3d 381, 422 (2011). In reviewing a trial court's denial of a motion for a mistrial, our standard is abuse of discretion. *Bryant,* 620 Pa. at 238.

In the present case, the prosecutor read to the jury a portion of a message found on Appellant's phone to his girlfriend. The prosecutor made a comment regarding the statement Appellant made. She read: "I fucked up real bad. Real bad. I want you to know I apologize about everything that I said. I don't wish no death on you. I was just upset. I'm always going to love you. I don't ever want to see anything happen to you. I love you more than you actually think. I will be thinking about you every day when I'm away. When the time comes, I already do, I love you, Pup. It's okay and everything is going to be fine. I think about you every day now cause this shit really boughtta be different, cause it is." N.T. 11/17/2022, p. 104.

The prosecutor then said, "Because he's really going to jail for life. That's real." Trial counsel objected and the court sustained the objection and struck that portion of the closing regarding "he's really going to jail for life." *Id.*

17

First, the prosecutor's comments were made in reference to the fact that Appellant's life was about to be different because he was going to spend his life in prison for the murder that he and the co-conspirator committed. It was in relationship to his consciousness of guilt regarding the message that he sent. There is absolutely no evidence to support Appellant's contention that the prosecutor acted intentionally or with a conscious disregard that such prosecutorial overreaching would create a substantial risk that appellant would be deprived of a fair trial and violate appellant's substantive and procedural due process rights such that the conviction should be overturned and a retrial barred. *See Commonwealth v. Johnson*, 231 A.3d 807 (2020).

Second, the court immediately sustained the objection concerning this passing reference to "life in prison" and struck the comment. N.T. 11/17/2022 p. 104. The court gave an instruction to the jury stating, "You should not concern yourself with any possible future consequences of your verdict including what the penalty may be should you find the defendant guilty. Questions of guilt and questions of penalty are decided separately." *Id.* at p. 154. The court also instructed the jury that "statements made by counsel are not evidence." N.T. 11/15/2022 p. 18; 11/17/2022 p. 4. When the trial court gives adequate instructions to the jury, a mistrial is not needed. *Chamberlain*, 30 A.3d at 408. Jurors are presumed to follow the trial court's instructions. *Commonwealth v. Cash*, 635 Pa. 451, 484 (2016), *citing Commonwealth v. Robinson* 581 Pa. 154 (2004).

Based on the fact that the prosecutor's comment reflected an explanation of why Appellant would say "things boughtta be different, cause it is," the court striking the comment, and instructing the jury appropriately, there was no need for a mistrial. Striking the "offending" comment and giving jury instructions addressing the issue is more than enough to avoid the need for a mistrial. Therefore, no relief is due.

18

**CONCLUSION:**

Based on the foregoing, Appellant's conviction and sentence should be affirmed.

BY THE COURT:

_DIANA L. ANHALT, J._

DATE: October 3, 2023

**PROOF OF SERVICE**

I hereby certify that I am this day serving the foregoing filing upon the below person(s) in the manner indicated below, which services satisfies the requirements of Pa.R.A.P. 122:

Daniel Alverez, Esquire                                          (First Class Mail)
100 South Broad Street
Suite 1910
Philadelphia, PA 19110
(215)494-8534

Lawrence Goode, Esquire
District Attorney of Philadelphia                          (First Class Mail)
3 South Penn Square
Philadelphia, PA 19107-4918
(215)686-8000

Tyrek McWilliam                                                 Certified Mail
Inmate #QP5977
SCI Fayette
50 Overlook Drive
LaBelle, PA 15450

**Dated: October 3, 2023**

*Margaret Kerns* 10/3/23
Margaret Kerns
Secretary for the Honorable Diana L. Anhalt

20